**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SOUTHWESTERN ELECTRIC COOPERATIVE, INC.,**

     **Plaintiff,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL**
**WORKERS, LOCAL NO. 702,**

     **Defendant.**                          **No. 11-cv-1047-DRH**

## ORDER

**HERNDON, Chief Judge:**

At issue here is whether plaintiff Southwestern Electric Cooperative Inc. (the "plaintiff" or "employer") and defendant International Brotherhood of Electrical Workers, Local No. 702 (the "defendant" or "union") have agreed to submit a particular grievance to arbitration.  For the reasons explained below, the Court finds that the parties have agreed to submit the grievance at issue to arbitration. Therefore, the Court denies plaintiff's  motion to vacate arbitration award (Doc. 4), grants defendant's motion to enforce arbitration award (Doc. 11), and grants defendant's motion for sanctions (Doc. 17).

## I.  Background

During the time period relevant to this case, the employer and union had entered into an "articles of agreement" (the "agreement") whereby the employer agreed to provide each of its employees a certain number of sick days per year.

The agreement provided that any unused sick days accumulated in the employee's personal sick bank, up to a maximum of seventy days. Days accrued beyond seventy went to the Central Bank, whose purpose was "to provide extended sick pay for employees who have exhausted their accumulated personal sick leave due to serious illness or injury and are unable to return to work as verified by a doctor's statement." (Doc. 5-2, p. 16).

Pursuant to the agreement, a four-person committee, consisting of two union representatives and two management representatives, was to be established to consider each request for payment. The agreement required a majority vote of the committee to approve payment from the Central Bank. Despite this provision, because the employer has three service areas, the parties agreed to establish a six-person committee, consisting of three union representatives and three management representatives (the "Central Bank committee").

The agreement also set forth grievance and arbitration procedures. Specifically, the agreement provided that "[a] complaint or grievance arising under the terms and provisions of this [a]greement, or any difference between the parties as to the interpretation and application of this [a]greement, shall be settled in accordance with the following procedures," which set forth the procedures for an aggrieved employee to take to present a complaint or grievance. In essence, if a complaint or grievance is not resolved internally between the employer and union, then the agreement provides that the matter shall be submitted to arbitration. Further, the agreement dictates that "[t]he [a]rbitrator shall have no authority to

change, alter, add or delete from the contract.  The [a]rbitrator's decision within the limits of his authority shall be final and binding upon the parties."

On October 19, 2010, plaintiff's employee, Joanne M. Branger, filed a request for sick leave from the Central Bank with plaintiff.  (Doc. 5-3).  Branger sought thirteen weeks or sixty-five days of sick leave bank days as a result of long-term disability.  (Doc. 5-3).  Branger's request was sent to the Central Bank committee and the three union representatives voted to her approve her request while the three management representatives voted to deny it.  Branger was notified of this decision by letter on November 12, 2010.  (Doc. 29-1).  On November 23, 2011, the union filed a grievance alleging that the employer violated the agreement by not paying Branger for her requested time from the Central Bank.  Unable to resolve the dispute internally, the grievance went to arbitration.  The arbitration was held on July 11, 2011, and on September 24, 2011, the arbitrator issued his award (Doc. 5-6), determining that the employer violated the agreement by not paying Ms. Branger for her requested Central Bank sick leave time and ordering the employer to pay her thirteen weeks of sick leave from the Central Bank.

On November 28, 2011, plaintiff filed a complaint to vacate arbitration award (Doc. 2), a motion to vacate the arbitration award (Doc. 4), and a memorandum in support thereof (Doc. 5).  In plaintiff's complaint and motion to vacate, plaintiff contends that 1) the arbitrator's award does not draw its essence from the collective bargaining agreement because a majority of the Central Bank

committee did not vote in favor of approving the grievant's request for Central

Bank time and 2) the arbitrator exceeded the scope of it authority and exhibited a

manifest disregard for the law because the Central Bank committee's decision was

not subject to arbitration because the Central Bank committee was a party to

neither the collective bargaining agreement nor the arbitration.

On January 4, 2012, defendant filed its answer and a counterclaim to

enforce the arbitration award (Doc. 10), arguing that the employer's refusal to

comply with the arbitrator's award is without justification or excuse and is

vexatious and unreasonable.  Accordingly, defendant requested an order enforcing

the award issued by the arbitrator, prejudgement interest, and an award to the

union of its attorney fees and costs.  That same day, defendant filed its motion to

enforce arbitration award (Doc. 11) along with a memorandum in support thereof

(Doc. 12).  On January 23, 2012, defendant filed a motion for sanctions pursuant

to Federal Rules of Civil Procedure 11 (Doc. 17) on the grounds that:

   1.   This case was filed and is being presented for improper
        purposes including the denial of paid sick leave on an arbitrary
        and capricious basis, to cause unnecessary delay in complying
        with the arbitration award issued by [the arbitrator] in favor of
        [d]efendant and to needlessly increase the cost of litigation;

   2.   The claims, defenses and other legal contentions are not
        warranted by existing law or by a nonfrivolous argument for
        extending, modifying or reversing existing law or for
        establishing new law.

   3.   The factual contentions have no evidentiary support.

As a result, defendant requests that the Court award defendant its reasonable

attorney fees and costs.  Plaintiff filed an opposition to defendant's motion for Rule 11 sanctions (Doc. 21), contending that sanctions were inappropriate because this is a case of first impression in which the only related case precedent supports plaintiff's position that the arbitration award should be vacated.  The Court will address the motion to vacate arbitration (Doc. 4) and motion to enforce arbitration award (Doc. 11) together first, followed by defendant's motion for sanctions (Doc. 17).

## II. Analysis

### A. Whether the Court Should Vacate or Enforce the Arbitration Award?

"Judicial review of arbitration awards under collective bargaining agreements is extremely limited."  *Dexter Axle Co. v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. 90, Lodge 1315*, 418 F.3d 762, 765 (7th Cir. 2005). The Federal Arbitration Act (the Act), 9 U.S.C. §§ 1-16, "reflects the fundamental principal that arbitration is a matter of contract."  *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them."  *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010).

"As with any contract, the touchstone for interpreting an arbitration clause must be the intention of the parties."  *Agco Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000).  "Whether an issue is subject to arbitration is a simple matter of contract interpretation."  *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 639 (7th

Cir. 2002)."[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  That is for the arbitrator to decide.  *Id.*

 "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010) (emphasis in original).  "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."  *Id.*

 "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation."  *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002)).  "Once it is clear, however, that the parties have a contract that provides for arbitration for some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of law."  *Gore*, 666 F.3d at 1032 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "'To this end, a court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.""" *Gore*, 666 F.3d at 1032 (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th

Cir. 1999)).  "The presumption of arbitrability is particularly applicable where the

arbitration provision is broad."  *Exelon Generation Co. v. Local 15, Int'l Bhd. of*

*Elec. Workers, AFL-CIO*, 540 F.3d 640, 646 (7th Cir. 2008) (citing *United*

*Steelworkers v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 279 (6th Cir. 2007)).

"Where the arbitration provision is broad . . . only an '"express provision excluding

a particular grievance from arbitration . . . [or] the most forceful evidence of a

purpose to exclude the claim from arbitration'" can keep the claim from

arbitration."  *Exelon Generation Co.*, 540 F.3d at 646 (quoting *AT&T Techs., Inc.*,

475 U.S. at 650.

     "'As long as the arbitrator's award "draws its essence from the collective

bargaining agreement," and is not merely "his own brand of industrial justice," the

award is legitimate.'"  *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters &*

*Allied Trades, Local 770*, 558 F.3d 670, 675 (7th Cir. 2009) (quoting *United*

*Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987)).  "A decision

draws its essence from the collective bargaining agreement when it has a plausible

foundation in the terms of the agreement."  *Clear Channel Outdoor, Inc.*, 558 F.3d

at 675.  Doubts are resolved in favor of enforcing the award.  *Id.*  "'It is only when

the arbitrator *must have* based his award on some body of thought, or feeling, or

policy, or law that is outside the contract . . . that the award can be said not to

"draw its essence from the collective bargaining agreement."'"  *Clear Channel*

*Outdoor, Inc.*, 558 F.3d at 675 (*Arch of Ill., Div. of Apogee Coal Corp. v. Dist. 12,*

*United Mine Workers of Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996)).  "It is

abundantly clear that it is the arbitrator who is behind the driver's wheel of interpretation, not the court." *Dexter Axle Co.*, 418 F.3d at 768. "Great deference is paid to an arbitrator's construction and interpretation of an agreement." *Id.* "It is elementary that the 'question of interpretation of the collective bargaining agreement is a question for the arbitrator.'" *Id.* (quoting *United Steel Workers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)). The Court's job in "reviewing a labor arbitrator's award is to ensure that the arbitrator was interpreting the collective bargaining agreement, not that he was doing so correctly." *Clear Channel Outdoor, Inc.*, 558 F.3d at 677 (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). A district court's grant or denial of a motion to compel arbitration is reviewed de novo. *Gore*, 666 F.3d at 1033.

Here, the presumption of arbitrability applies. Indeed, the agreement is quite broad, providing that "[a] complaint or grievance arising under the terms and provisions of this [a]greement, or any difference between the parties as to the interpretation and application of this [a]greement," shall be governed by the procedures set forth in the agreement, which ultimately leads to arbitration. See *Exelon Generation Co.*, 540 F.3d at 646 (applying the presumption of arbitrability where the arbitration provision was quite broad and covered "'any dispute . . . as to the interpretation or application or any of the provisions of this Agreement'"). Thus, with the presumption in place, plaintiff's hurdle just became a little higher.

Even without this presumption, however, there is no question the arbitrator

was interpreting the agreement when he rendered his decision.  In his twenty-three page decision, the arbitrator set forth all of the pertinent agreement provisions and went through a thorough background of how the parties came to reach the agreement, including noting that chief executive officer Kerry Sloan testified that in a negotiation session in 2002, he told the union business representative, Danny Miller, that the union could arbitrate a denial of a request to use sick leave from the Central Bank if the employer was not acting fairly and deadlocked on every request.  On cross-examination, Sloan stated if the employer was not acting fairly then the union could arbitrate.  Moreover, the arbitrator specifically considered the employer's argument that there was nothing in the contract that demonstrated that it was the intent of the parties to allow decisions of the Central Bank committee to be subject to review through the grievance and arbitration process.  Indeed, the arbitrator found that the agreement's language that "any difference between the parties as to the interpretation and application of this [a]greement" was very broad language for triggering the grievance procedure. As such, he determined that there was clearly "a difference between the parties as to the interpretation and application of this [a]greement" regarding how sick leave from the Central Bank should be administered.  Additionally, he found that the history and language of the agreement supported a finding that the dispute is arbitrable, noting that before 2002, decisions of the Central Bank committee were specifically excluded from arbitration.  That language was removed in 2002. Thus, this Court finds it abundantly clear that the arbitrator was interpreting the

agreement when he rendered his decision.  See *Clear Channel Outdoor, Inc.*, 558 F.3d at 676 ("The arbitrator's decision thus drew its essence from the collective bargaining agreement: It was tethered to the language of the agreement, it set forth an arguable construction of the agreement, and it applied that interpretation to the facts that the parties submitted.").  Even if the Court disagreed with the arbitrator's decision, which it does not, it would not be in a position to reinterpret the agreement; that was the arbitrator's job.  See *Clear Channel Outdoor, Inc.*, 558 F.3d at 679 ("But it was not our construction of the contract for which the parties bargained.  They agreed to have an arbitrator interpret their agreement.  And because the arbitrator's decision drew its essence from the agreement, we are obliged to uphold the arbitrator's award.").  Accordingly, the Court finds that parties agreed to arbitrate the dispute at issue.  The Court cannot say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute.  *Gore*, 666 F.3d at 1032.  To the contrary, the agreement clearly indicates that this was the type of dispute that was intended to be arbitrated between the parties.  Had plaintiff intended otherwise, it could have contracted to have the agreement state that decisions of the Central Bank committee are not subject to arbitration.  See *Dreis & Krump Mfg. Co. v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 255 (7th Cir. 1986) ("If the company wanted an unlimited right of subcontracting it should have written it into the management-rights clause or created an express exception to the arbitration clause . . . .").  The agreement does not.  Rather, it indicates that

a complaint or grievance "arising under the terms and provisions of this [a]greement, or any difference between the parties as to the interpretation of this [a]greement, shall be settled in accordance" with the procedures set forth in the agreement.  See *CUNA Mut. Ins. Soc'y*, 443 F.3d at 563 ("Here, the provision only defines the scope of the arbitrator's inquiry; it does not impose a substantive limit on what is to be arbitrated.  This scope is open to interpretation by the arbitrator, and as we have discussed above, [the arbitrator's] interpretive route was reasonable and easy to follow.").  The arbitrator's decision had a plausible foundation in the agreement.  Plaintiff's arguments to the contrary simply lack merit and warrant no further discussion.  As a result, plaintiff's motion to vacate arbitration award (Doc. 4) is denied and defendant's motion to enforce arbitration award (Doc. 11) is granted.  The arbitrator's award is upheld and plaintiff is ordered to follow it.

B.  *Whether the Court Should Impose Sanctions?*

Under the familiar "American Rule," each party to a lawsuit ordinarily bears its own attorney's fees unless a statute, a contract, or decisional authority provides otherwise.  See *Alyeska Pipeline & Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 466 (7th Cir. 2006); *Osler Inst., Inc. v. Forde*, 386 F.3d 816, 818 (7th Cir. 2004).  Rule 11 provides one of those exceptions.

Rule 11 provides, in pertinent part, that "[b]y presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting,

or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]" FED. R. CIV. P. 11(b)(1).  The rule provides further that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." FED. R. CIV. P. 11(c)(3).  "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "[t]he sanction may include nonmonetary directives" or "an order to pay a penalty into court[.]" FED. R. CIV. P. 11(c)(4).  Finally, "[a]n order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." FED. R. CIV. P. 11(c)(6).

"Under Rule 11, the district court may impose sanctions if a lawsuit is 'not well grounded in fact and is not warranted by existing law or a good faith argument for extension, modification, or reversal of existing law.'" *CUNA Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d

957, 963 (7th Cir. 1993)).  "The court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.'"  *Id.*  Rule 11 does not require bad faith on the part of a party or its counsel; rather it is an objective test.  *Dreis & Krump Mfg. Co.*, 802 F.2d at 255. A "long line of Seventh Circuit cases . . . have discouraged parties from challenging arbitration awards and have upheld Rule 11 sanctions in cases where the challenge to the award was substantially without merit."  *CUNA Mut. Ins. Soc'y*, 443 F.3d at 560 (collecting cases).  The Seventh Circuit reviews a district court's decision to impose Rule sanctions using an abuse of discretion standard.  *CUNA Mut. Ins. Soc'y*, 443 F.3d at 560 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Here, the Court finds that plaintiff's challenge to the arbitration award is substantially without merit and sanctions are therefore warranted.  Looking objectively at plaintiff's challenge, as the Court must, it cannot discern how plaintiff could logically believe that this dispute was not subject to arbitration.  In fact, as the arbitrator explained, the parties clearly contemplated arbitrating disputes such as these.  If plaintiff truly believed this case was not subject to arbitration, it could have refused to arbitrate this case in the first place, which would have likely resulted in defendant filing a motion to compel arbitration.  At that point, the Court would have decided whether the parties agreed to arbitrate the dispute at issue, and if the Court found that they did not, no arbitration would have taken place.  That is not what happened here.  Arbitration has already

occurred, and the arbitrator's award has been rendered.  Unhappy with the arbitrator's decision, plaintiff attempts to frame its argument as a dispute as to whether the parties ever agreed to arbitrate the grievance at issue, which the Court finds obviously arises from the agreement between the parties and is therefore subject to arbitration.  See *Dreis & Krump Mfg. Co.*, 802 F.2d at 255 ("A company dissatisfied with the decisions of labor arbitrators need not include an arbitration clause in its collective bargaining contracts, but having agreed to include such a clause it will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals.").   This is exactly the type of situation that the Seventh Circuit has warned attorneys from pursuing and this is an appropriate case for sanctions. See *CUNA Mut. Ins. Soc'y*, 443 F.3d at 561 ("The precedent is clear and emphatic and directs us to uphold sanctions in a broad spectrum of arbitration cases."); *Dreis & Krump Mfg. Co.*, 802 F.2d at 256 ("Lawyers practicing in the Seventh Circuit, take heed!").   Accordingly, the Court hereby grants defendant's motion for sanctions (Doc. 17) and imposes as sanctions the defendant's reasonable costs and attorney fees in defending this suit.

### III.  Conclusion

For the reasons stated above, the Court denies plaintiff's  motion to vacate arbitration award (Doc. 4), grants defendant's motion to enforce arbitration award (Doc. 11), and grants defendant's motion for sanctions (Doc. 17).  Plaintiff is ordered to comply with the arbitrator's award, and pay pre-judgment interest and

defendant's reasonable attorney fees and costs.  If the parties can resolve the rate

of pre-judgment interest, attorney fees, and costs, the Court would be much

obliged, and the parties can notify the Court of this within fourteen days of this

order.  If this cannot be done, however, the parties are ordered to brief this issue

within thirty days of the date of this order.

**IT IS SO ORDERED.**

Signed this 26th day of August, 2012.

David R. Herndon
2012.08.26
07:45:04 -05'00'

**Chief Judge**
**United States District Court**